IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **RICHARD SCHLEMER,** | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **Civil No. 07-265-DRH** |
| **MICHAEL J. ASTRUE,** **Commissioner of Social Security,** | ) ) ) ) | |
| Defendant. | ) | |

## REPORT and RECOMMENDATION

This Report and Recommendation is respectfully submitted to Chief Judge David R. Herndon pursuant to **28 U.S.C. § 636(b)(1)(B)**.

In accordance with **42 U.S.C. § 405(g)**, plaintiff Richard Schlemer seeks judicial review of the final agency decision finding that he is not disabled and denying him Disability Insurance Benefits (DIB) pursuant to **42 U.S.C. § 423**.

## Procedural History

Plaintiff filed an application for DIB in August, 2004, alleging disability beginning on December 1, 2003. (Tr. 62). He claims disability due to a heart attack, back and hip impairments, depression, fibromyalgia, and arthritis. (Tr. 110). Plaintiff was insured for DIB through March 31, 2005. (Tr. 75).

The application was denied initially and on reconsideration. At plaintiff's request, a hearing was held before Administrative Law Judge (ALJ) Thomas C. Muldoon on September 5, 2006. (Tr. 784-800). ALJ Muldoon denied the application for benefits in a decision dated September 20, 2006. (Tr. 14-21). Plaintiff's request for review was denied by the Appeals Council, and the September 20, 2006, decision became the final agency decision. (Tr. 6).

Plaintiff has exhausted his administrative remedies and has filed a timely complaint in

this court.

## Issues Raised by Plaintiff

Plaintiff raises the following issues:

1.  Whether the ALJ's decision denying him benefits was supported by substantial evidence in that the ALJ failed to consider relevant medical evidence, plaintiff's testimony, and the effect of his depression;

2.  Whether the ALJ's use of the preponderance standard was improper;

3.  Whether the ALJ impermissibly substituted his own medical judgment for the expert medical evidence in the record.

## The Evidentiary Record

The court has reviewed and considered the entire record in formulating this Report and Recommendation. The following is a summary of some of the pertinent portions of the written record.

**1. Hearing, September 5, 2006**

Plaintiff was the only witness who testified at the hearing. He was represented at the hearing by attorney Lance Mallon. (Tr. 786).

Richard Schlemer was born on December 14, 1953. He was 5'10" tall and weighed about 160 pounds at the time of the hearing. He has a high school education and served in the military. (Tr. 787).

Plaintiff testified that his chief physical problems are that he has suffered a heart attack, has undergone two neck fusions, and suffers from pain in his neck, back, and hip. (Tr. 788). He testified that he has "constant pain" in his neck, shoulder, left arm, back, left hip, and leg. He also alleged numbness and tingling in his hand. (Tr. 788-789). He testified that his neck, low back, leg and hip hurt when he walks more than a couple of blocks, and he can sit for only 15 to 20 minutes at a time. (Tr. 789-790). Bending and stooping cause him pain. He testified that he

can lift only 15 pounds or so. (Tr. 790). He has pain after sitting in a car or driving for 15 or 20 minutes. (Tr. 793).

Plaintiff testified that he has intermittent chest pain since he had a heart attack, and shortness of breath. (Tr. 796-797).

Plaintiff testified that activities such as vacuuming, gardening and yard work cause pain in his neck, hip and back. (Tr. 791).

Mr. Schlemer testified that he is depressed, but cannot take antidepressants because of the side effects. He does take anti-anxiety medication. He said that he has no friends and no money and he feels "like a loser." He said that he thinks about suicide a couple of times a month. He is tense and apprehensive, and experiences panic attacks and nightmares. (Tr. 793-795).

Plaintiff was asked to describe a typical day. He testified that he does not do much of anything. He watches some television. (Tr. 797).

Mr. Schlemer was attempting to get "reinstated to VA disability" at the time of the hearing. (Tr. 798).

**2.     Work History**

Plaintiff completed a Work History Report, which is located at Tr. 133-140. He worked as a drywaller from 1981 though May 28, 1998. He left that job because "popped SI joint & disc" and was unable to do "heavy physical work anymore." He worked as an insurance salesman from January, 2000, to May, 2003. He left that job because he "couldn't make enough money." He worked as truck driver-trainee for a short time in 2003, but "couldn't take the constant sitting" and bouncing. From August 25, 2003, through December 15, 2003, he worked doing cleaning and light maintenance in a nursing home. He left that job because had a heart attack and was unable to work for three weeks, and was fired. His last job was inspecting roofs

for an insurance company. This job lasted only three weeks in August, 2004. He quit because he could not physically do it.

**3.    Medical records - heart attack**

Mr. Schlemer was admitted to Alton Memorial Hospital on December 11, 2003, with complaints of chest pain. He was transferred to Christian Hospital Northeast. (Tr. 230-231).

At Christian Hospital Northeast, cardiac catheterization, angioplasty and stenting were performed on December 12, 2003. (Tr. 202–208). The records indicate that Mr. Schlemer had been having episodic chest pain for the past two months, and had been woken up by chest pain two nights earlier. Catheterization showed stenosis. A stent was placed in the left anterior descending coronary artery. He was seen for follow-up on January 2, 2004. He was noted to be angina-free. He was instructed to get further follow-up care at the VA because of "insurance reasons." (355-362).

**4.    Medical records - VA Hospital**

The record contains voluminous medical records from the St. Louis Veterans Administration Medical Center, where plaintiff received most of his medical treatment.

A note dated January 13, 2004, indicates that Mr. Schlemer had 3 stents in place and was free of angina. He was accompanied by his girlfriend. He was described as "histrionic about aches and pains in his shoulders." He was counseled that he would "do well" with conditioning, walking, and weight training. (Tr. 307-308). On February 20, 2004, he again came in with his girlfriend. He complained of neck and low back pain. His neck had a normal range of motion, and his gait was within normal limits. The note indicates that he was not having chest pain, and was very sore from working out at the gym. He was noted to be deconditioned, and was counseled about the benefits of exercise. (Tr. 304-305).

Plaintiff underwent physical therapy for back and neck pain n March, 2004. (Tr. 293).

A progress noted dated May 5, 2004, states that plaintiff was living with his girlfriend. He had worked as a drywaller, but was hurt on the job. He had difficulty finding another job and declared bankruptcy. The notes states "Now working as maintenance worker at HN." He was prescribed pain medication. There is also a notation that he was looking for a job during the day, and did not have time for physical therapy. He was counseled to walk every day and stretch. (Tr. 274-277).

Plaintiff had a cardiology consult on May 17, 2004. He had no angina, shortness of breath, or other cardiovascular symptoms. (Tr. 273).

Mr. Schlemer had additional physical therapy for his low back complaints in June, 2004. (Tr. 265-267).

A cardiology note dated September 10, 2004, states that he was doing well with no angina. (Tr. 259).

On October 6, 2004, it was noted that plaintiff was advised that he did not need surgery for his back pain, and that exercise was the best treatment. He was told to walk for 45 minutes, 5 days a week, and to stretch after walking. (Tr. 619).

Plaintiff had a neurology consult on October 26, 2004. He reported pain and stiffness in his neck and back. On exam, he was able to walk "with stability." He could flex to 90 degrees, but could only extend 5 to 10 degrees. He had a small lumbar disc herniation without neuronal compression. The doctor "could not restrict his activity on back at this time." He noted that he should lift no more than 40 pounds intermittently and 25 on a regular basis. (Tr. 614-616). On December 14, 2004, neurology consults were discontinued, as he did not need surgery. (Tr. 613).

On January 28, 2005, plaintiff reported that he was not happy with his life, but he had no suicidal tendencies. He was working selling insurance. He had no friends and did not go out.

He was prescribed Celexa, and was encouraged to talk to Human Resources, as he has communication and computer skills and "may make a fine clerk." (Tr. 609-610).

On May 6, 2005, plaintiff reported that he was depressed, but not suicidal. He was selling insurance, but not making any money and was almost broke and almost homeless. He was smoking more, not exercising, and eating box pizza almost every day. He was again prescribed Celexa. (Tr. 593). On July 13, 2005, plaintiff denied depression and reported that he was feeling much better. He was still working selling insurance. He had no chest pain. (Tr. 594).

Mr. Schlemer was seen in the chiropractic clinic beginning in December, 2005, and experienced improvement as a result of chiropractic treatment. On January 25, 2006, he reported that the treatment had helped his low back and that he felt better than he had in 5 years. (Tr. 561-585).

On February 13, 2006, a depression screen was negative. (Tr. 551).

On February 22, 2006, a note indicates that he had been seen by the chiropractor over a dozen times, and he stated that it was the first time he could move without too much pain. He was advised to Flexeril only when sleeping or laying around the house, and to do his strengthening exercises. (Tr. 550).

On March 3, 2006, plaintiff was treated for thoracic pain on the left side. He reported that playing guitar made the pain worse. He also reported that he had been raking leaves 2 days earlier, which caused him to feel achy the next day. (Tr. 546). He continued to receive chiropractic care at the VA Hospital. On March 31, 2006, he reported that he had no low back pain, and he rated his shoulder pain as a 3 on a scale of 1 to 10. (Tr. 535). On April 5, 2006, he complained that his low back pain was exacerbated by picking up branches and shingles after a storm. (Tr. 534). His low back was feeling better on April 12, 2006. (Tr. 531). On June 9,

2006, he reported that his low back was "responding well" to treatment, but he continued to have shoulder pain. (Tr. 521). On June 21, 2006, Mr. Schlemer stated that he wanted to continue treatment because it helped him with his activities of daily living. He stated that he had gone swimming the day before. (Tr. 518).

On July 28, 2006, plaintiff was screened for depression. He indicated that he gets lightheaded at times and has a "feeling of impending doom." He denied suicidal ideation. The patient was counseled that "he may have some anxiety/depression over his health and financial situation." The record states that patient "can be very histrionic." (Tr. 505).

### 5. Radiology Reports - VA Hospital

An MRI of the lumbar spine dated September 25, 2004, showed that the spinal segments were aligned. There was mild degenerative disc disease, but no large disc herniation or canal stenosis. The was mild disc bulge at L3-L4, L4-L5 and L5-S1, and a small central disc herniation at L5-S1 without direct neural compression. (Tr. 246-247, 256).

X-rays of the sacroiliac joints on September 20, 2004, were negative, with no evidence of sclerosis or degenerative changes. (Tr. 248-249). X-rays of the left shoulder on November 22, 2005, showed no fracture, dislocation, or other abnormality. (Tr. 376).

A CT of the lumbar spine on August 4, 2004, showed a mild central and left lateral disc herniation at L5-S1 with slight compromise of the left neural foramen, and a central disc bulge at L4-L5. (Tr. 249-250). An MRI of the lumbar spine on September 25, 2004, revealed mild degenerative disc disease, with no large disc herniation or canal stenosis. There was a small central disc herniation at L5-S1, without neural compression. (Tr. 380).

A CT of the cervical spine on April 29, 2004, showed that hardware from a previous fusion from C5 to C7 was intact. There was multilevel mild spondylitic change, but no large disc herniation. (Tr. 250-251). Another CT scan of the cervical spine on January 17, 2006,

-7-

showed post fusion changes at C6-C7, with metallic implants. The spinal canal was normal, with no spinal stenosis or disc herniation. Other than the post-fusion changes, the CT was "unremarkable." (Tr. 375).

### 5. Consultative examination

On December 23, 2004, Raymond Leung, M.D., performed a consultative examination. His report is located at Tr. 322-327.

Dr. Leung noted that Mr. Schlemer "currently works full time selling mortgage insurance." (Tr. 323). Plaintiff gave a history of arthritis in his neck and back, and a heart attack. He stated that his SI joints pop in and out, and that he has muscle spasms . Physical therapy helped his back, as did pain medicine and muscle relaxers. He complained of episodes of chest pain was left sided and sharp. Mr. Schlemer told Dr. Leung that he was able to walk 3 blocks and that he was on a 50 pound weight restriction for his back.

On exam, his gait was normal and he was able to walk unassisted for 50 feet. He was able to heel and toe walk, and to squat. He had no paralumbar spasm. He had a full range of motion of the lumbar spine, but some limitation of range of motion in the neck. His grip strength was normal, and he had normal strength in the arms and legs, with no muscle atrophy.

Stephen G. Vincent, Ph.D., performed a psychological examination on December 23, 2004. His report is at Tr. 319-321. Plaintiff gave a history of grappling with depression since 1998, and indicated that he had taken Paxil. He stated that his chronic neck pain and limited range of motion caused him to be irritable and frustrated. He also stated that his low back pain made it difficult for him to "lift, bend, stand, stoop or sit without pain and discomfort." Mr. Schlemer said that he lived alone and stayed busy by watching TV. He reported that he feels like he is not as sharp as he used to be and that he has had trouble with reading comprehension and short term memory.

Dr. Vincent reported that plaintiff was oriented to person, place, time, and situation. His though processes were logical, coherent and relevant. His mood and affect were moderately depressed. He was able to remember 5 numbers forward and backward. He counted by threes, and was able to do serial sevens. Dr. Vincent concluded that he had the cognitive capacity to effectively manage his own funds. He was not psychotic or suicidal.

### 6. State agency physician reports

State agency physician Julio M. Pardo, M.D., completed a functional capacity assessment on January 10, 2005. (Tr. 342-349). He concluded that plaintiff was capable of performing light work in that he could frequently lift 10 pounds, occasionally lift 20 pounds, stand or walk for 6 out of 8 hours, sit with normal breaks for 6 out of 8 hours, and had no push/pull limitations. He noted no manipulative limitations, and the only postural limitation was that he was restricted to only occasional climbing on ladders, ropes, and scaffolds.

Dr. Pardo indicated that he reviewed and considered Dr. Leung's report in reaching his conclusions.

The assessment was reviewed and affirmed by a second state agency consulting physician on April 11, 2005. (Tr. 351).

On January 6, 2005, Donald E. Henson, Ph.D., completed a psychiatric review functional capacity assessment. He concluded that Mr. Schlemer does have depression, with only mild limitations and no episodes of decompensation. (Tr. 328-340).

### Applicable Standards

To qualify for disability insurance benefits, a claimant must be "disabled." "Disabled" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42**

**U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).** A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. In essence, it must be determined (1) whether the claimant is presently employed; (2) whether the claimant has an impairment or combination of impairments that is severe; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. **See,** *Schroeter v. Sullivan*, **977 F.2d 391, 393 (7th Cir. 1992);** *Pope v. Shalala*, **998 F.2d 473, 477 (7th Cir. 1993); 20 C.F.R. § 404.1520(b-f).**

If the Commissioner finds that the claimant has an impairment which is severe and she is not capable of performing her past relevant work, the burden shifts to the Commissioner to show that there are a significant number of jobs in the economy that claimant is capable of performing. **See,** *Bowen v. Yuckert*, **482 U.S. 137, 146, 107 S. Ct. 2287, 2294 (1987);** *Knight v. Chater*, **55 F.3d 309, 313 (7th Cir. 1995).**

It is important to keep in mind the proper standard of review for this court. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g).** Thus, the Court must determine not whether Mr. Schlemer is, in fact, disabled, but whether ALJ Muldoon's findings were supported by substantial evidence; and, of course, whether any errors of law were made. **See,** *Books v. Chater*, **91 F.3d 972, 977-978 (7th Cir. 1996) (citing** *Diaz v. Chater*, **55 F.3d 300, 306 (7th Cir.1995)).** The Supreme Court has defined substantial evidence as "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." ***Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971).**

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this court *does not* reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. ***Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997).**

<u>Analysis</u>

Here, the ALJ properly followed the five step analysis. He concluded that plaintiff does have impairments of status post-fusion at C5-C6 and C6-C7, mild degenerative disc disease of the lumbosacral spine, status post-myocardial infarction with stent placement, hyperlipidity controlled by medication, and infrequent symptoms of mild anxiety and depression, and that these impairments do not meet or equal a listed impairment. (Tr. 20). Mr. Schlemer does not challenge the finding that his condition does not meet or equal a listed impairment. The ALJ found that plaintiff's testimony about the physical impairments and limitations, as well as his testimony about his mental impairments, was exaggerated and unsupported by the preponderance of the medical evidence. (Tr. 19). The ALJ concluded that plaintiff is able to do a full range of light work, including his previous job of selling insurance. (Tr. 20-21).

The court turns to plaintiff's second point first. Plaintiff complains that the ALJ erred in applying the preponderance of the evidence standard. He suggests that the ALJ should have used the substantial evidence standard. He is incorrect. The substantial evidence standard is used by the court in reviewing the agency's decision. **42 U.S.C. § 405(g); *Books v. Chater*, 91 F.3d 972, 977-978 (7th Cir. 1996)**. However, the Seventh Circuit has held that an ALJ should apply the preponderance of the evidence standard, as that is the "default standard in civil and administrative proceedings." ***Jones for Jones v. Chater*, 101 F.3d 509, 512 (7th Cir. 1996)**.

Plaintiff's first point is that the ALJ's decision is not supported by substantial evidence because the ALJ ignored some of the medical evidence and did not fully accept the plaintiff's testimony.

Plaintiff's brief points out that the RFC assessment states that he could not lift more than ten pounds frequently. That weight restriction does not support a finding of disability. The exertional requirements for light work are "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §404.1567(b). "'Frequent' means occurring from one-third to two-thirds of the time." SSR 83-10.

In additional, plaintiff misreads the functional capacity assessment in that he states that he "was given limitations on climbing, stooping, balancing, kneeling, crouching and crawling." **See, Doc. 15, p. 10**. The RFC stated that he could "frequently" climb on ramps and stairs, balance, stoop, kneel, crouch, and crawl. He was limited to "occasionally" climbing ladders, ropes or scaffolds. (Tr. 344). These minimal postural limitations do not conflict with the finding of ability to do light work. Even postural limitation such as a complete inability to climb scaffolding, poles, and ropes, or a complete inability to crawl on hands and knees, has "very little or no effect on the unskilled light occupational base." SSR 83-14.

Plaintiff complains that the ALJ did not discuss the MRIs and CT scans that were performed on him. He is incorrect. The ALJ discussed the MRI of the lumbar spine that was done on September 25, 2004, and noted that it "showed only mild disc bulging from L3 to S1 and a small central herniated disc at L5-S1 without actual neural compression." He also noted that, in January, 2006, a CT scan of the cervical spine "showed only signs of the old fusion from C5 to C7." (Tr. 17).

The ALJ discussed the medical treatment, accurately noting that plaintiff's treating doctors have opined that he has the residual functional capacity to perform work at a level more

strenuous than light work in that he can lift 20 pounds frequently and 40 pounds occasionally. (Tr. 16, 18).

In essence, plaintiff's point is that the ALJ should have accepted his testimony that his low back pain and depression render him unable to do any work. He is incorrect. The ALJ does not have to credit the plaintiff's testimony. ***Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006).** A reviewing court must afford an ALJ's credibility finding "considerable deference" and can overturn it only if it is "patently wrong." ***Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir.2006); *Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir.2005).** "Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported ... can the finding be reversed." ***Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir.2006)**.

Here, the ALJ's credibility findings were based on observations that are reasonable and supported by the record. The ALJ found that plaintiff's claims of physical impairments and limitations were contradicted by the medical evidence. The ALJ accurately noted that "for the most part, actual medical findings did not show a severe degree of musculoskeletal disease or impairment." (Tr. 17). After discussing the September, 2004, MRI, the ALJ noted that, on October 6, 2004, plaintiff was told that he did not need surgery, and that he should treat his back pain with exercise. (Tr. 17). At the time of the consultative exam in December, 2004, plaintiff had a normal gait and full range of motion of the lumbar spine. With the exception of some limitation of the range of motion of the cervical spine, "All other physical signs on examination were normal or unremarkable." (Tr. 17-18). There was even less support in the medical records for the claims of mental impairments, in that, although he had ready access to treatment at the VA hospital, plaintiff "has had very little in the way of psychiatric treatment." (Tr. 19).

The court also notes that Mr. Schlemer's testimony about having suicidal thoughts is

contradicted by the records in that it is noted several times that he specifically denied same. His claims of ongoing chest pain are also contradicted by the medical records.

The ALJ noted that the none of the doctors who treated plaintiff ever stated or implied that he is disabled, and no doctor has ever placed long term limitations on his ability to do basic exertional activities. (Tr. 18). In fact, plaintiff's treating doctors have given him weight restrictions in excess of those required for light work.

These contradictions support the ALJ's credibility findings. A "discrepancy between the degree of pain claimed by the applicant and that suggested by medical records is probative of exaggeration." **Sienkiewicz v. Barnhart, 409 F.3d 798, 804 (7th Cir. 2005)**.

The ALJ also noted a discrepancy in plaintiff's work history, in that, while he claims to have been disabled since December, 2003, he had over $6,000.00 in self-employment earnings in 2005. (Tr. 15). See also, Tr. 72, 75. The medical records from the VA medical center indicate that in January, May, and July, 2005, plaintiff told VA health care providers that he was working selling insurance, but that he was not making any money and was going broke. (Tr. 593, 594, 609, 610). This supports a finding that there is work that Mr. Schlemer is able to perform. Plaintiff "is not disabled within the meaning of the Social Security Act merely because the only jobs he can obtain pay much less than his former work. The job need only exist; it need not be a job that the applicant would find attractive. 20 C.F.R. § 404.1566(c)(8)." **Schmidt v. Sullivan, 914 F.2d 117, 119 (7th Cir. 1990).**

Plaintiff's last point is that the ALJ impermissibly "played doctor" in that he ignored relevant medical evidence favorable to plaintiff's claim. The medical evidence which he claims was ignored is that Dr. Rogalsky told plaintiff he could no longer drywall, Dr. Gornet told plaintiff that he must be careful bending or loading, the RFC assessment placed postural limitations on him, and a VA doctor told him he could not lift more than 10 pounds regularly.

It is true that the ALJ's decision must be based on testimony and medical evidence in the record, and not on his own "independent medical findings." **Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996).** The Seventh Circuit has reversed because an ALJ "played doctor" in cases where the ALJ has failed to address relevant evidence. **Dixon v. Massanari, 270 F.3d 1171, 1177-1178 (7th Cir. 2001), and cases cited therein.**

The fallacy in plaintiff's argument here is that none of the medical opinions indicates that plaintiff is unable to do light work. Dr. Rogalsky treated plaintiff in 1998 for a work related injury. Dr. Rogalsky did tell plaintiff that he could no longer work as a drywaller. See, Tr. 173. However, this does not contradict the ALJ's opinion that Mr. Schlemer is able to do light work. In fact, Dr. Rogalsky's records indicate that, on May 2, 2003, he was "appropriate for a light work demand level with a maximum lifting of 40 pounds occasionally (20 pounds regularly)." (Tr. 180). While Dr. Gornet did tell plaintiff that he must be careful in bending or loading, Dr. Gornet also told plaintiff that he could return to work, but could not lift anything over 25 pounds. (Tr. 182). The court has already discussed the postural limitations in the RFC assessment and the reasons why such minimal limitations do not disable plaintiff from light work. Lastly, plaintiff cites the fact that a VA doctor told him he could not lift more than 10 pounds regularly. He is referring to a note dated September 1, 2004, in which Dr. Brenner stated that plaintiff was not to lift more than 10 pounds regularly, and not more than 25 pounds at all. (Tr. 262). These weight restrictions are within the exertional limits for light work. 20 C.F.R. §404.1567(b).

This is not a case where the ALJ disregarded medical opinions that were favorable to plaintiff. The simple fact is that there were no such favorable medical opinions. The medical evidence is consistent in that all of the medical evidence indicates that plaintiff has the physical capacity to perform work in the light range. Therefore, he is not disabled.

In sum, after careful review of the record and of the briefs of the parties, this court is convinced that the ALJ's decision is supported by substantial evidence in the record, and that no errors of law were made.

### **Recommendation**

For the aforesaid reasons, it is the recommendation of this court that the final decision of the Commissioner of Social Security finding that plaintiff Richard Schlemer is not disabled, and therefore not entitled to Disability Insurance Benefits, be **AFFIRMED**.

Objections to this report and recommendation must be filed on or before July 25, 2008.

**Submitted: July 8, 2008.**

        **s/ Clifford J. Proud**
        **CLIFFORD J. PROUD**
        **UNITED STATES MAGISTRATE JUDGE**